# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>R & S ST. ROSE, LLC<br><br>    Debtor.<br><br>BRANCH BANKING AND TRUST COMPANY, SUCCESSOR IN INTEREST TO FDIC AS RECEIVER OF COLONIAL BANK N.A.,<br><br>    Plaintiff,<br><br>v.<br><br>R & S ST. ROSE, LLC,<br><br>    Defendant.<br><br>AND CONSOLIDATED APPEALS | CONSOLIDATED CASES:<br>Case No. 2:12-cv-01615-LDG (GWF)<br>Case No. 2:12-cv-01617-LDG (GWF)<br>Case No. 2:12-cv-01647-LDG (GWF)<br>Case No. 2:12-cv-01667-LDG (GWF)<br><br>Bankruptcy Case No. 11-14974-mkn<br>Chapter 11<br>Bankruptcy Case No. 11-14973-mkn<br>Chapter 11<br><br>Appeal Ref. No. 12-39<br>Appeal Ref. No. 12-40<br>Appeal Ref. No. 12-43<br>Appeal Ref. No. 12-44 |

**<u>ORDER</u>**

Branch Banking and Trust Company, as successor in interest to FDIC as receiver of Colonial Bank N.A. (BB&T), and Commonwealth Land Title Insurance Company (Commonwealth) each appeal the bankruptcy court's denial of their motions for substantive

consolidation of the related Chapter 11 Bankruptcy actions of R&S St. Rose, LLC (R&S), and R&S St. Rose Lenders (Lenders) (jointly Debtors). Having considered the arguments of the parties and the record, the Court will vacate the bankruptcy court's orders and remand this matter for further proceedings.

This Court has jurisdiction to hear appeals from final judgments, orders, and decrees of the bankruptcy courts. *See* 28 U.S.C. § 158(a)(1). The bankruptcy court's orders on the motions for substantive consolidation are final and subject to appeal under 28 U.S.C. § 158(a)(1). *See In re Bonham*, 229 F.3d 750, 762 (9th Cir. 2000). This Court reviews "the bankruptcy court's conclusions of law *de novo* and its findings of fact for clear error." *Id.*, at 763.

Both of the Debtors, R&S and Lenders, were formed in 2005, with each having the same members: Forouzan, Inc., and RPN LLC. These members were respectively owned and controlled by Saiid Forouzan Rad and R. Phillip Nourafchan. R&S was established to land-bank certain real property. To partially finance its purchase of the property, R&S obtained a loan from Colonial Bank (BB&T's predecessor-in-interest).

Lenders was established to help complete R&S's financing of the purchase by raising funds from investors and then lending money to R&S in exchange for a promissory note and a second deed of trust. However, as noted by the bankruptcy court (and somewhat conceded by the Debtors below), the Debtors were "sloppy with certain corporate formalities during the period in which the underlying business transactions transpired," and "were initially sloppy by depositing the Investment funds into R&S's account and listing the funds in R&S's tax returns."[1] That is, the investors' checks to fund

---

[1] Having reviewed the record, the bankruptcy court's characterization of the Debtors' as "sloppy" is, at best, an understatement. The record is sparse as to any effort, prior to 2008, undertaken by the Debtors' members, or the owners of those members, to treat the Debtors as distinct entities. Rebecca Daniels, an employee of R&S Investment since October 2005, who acted as accountant for the various R&S related entities, was not aware of Lenders until September 2008, when she created its books and records.

the loan from Lenders to R&S were not made out to Lenders, but instead were made out to R&S or to R&S Investment Group. As stated by the bankruptcy court, R&S (not Lenders) deposited the investment funds from the investors into its account, but Lenders executed promissory notes to each investor. R&S (not Lenders) made interest payments to the investors on the promissory notes. R&S (not Lenders) listed the investment funds on its tax returns until 2008. R&S did not make any payments to Lenders, and Lenders did not have its own bank account, books or records until 2008.

In early 2007, Colonial Bank and R&S entered into a modification of Colonial Bank's loan to R&S. Later in 2007, R&S obtained a second loan from Colonial Bank which was used, in part, to retire the original loan. In 2008, two of the investors commenced a state court action against the Debtors and other related individuals and entities, as well as against Colonial Bank. In that same year, the Debtors also engaged in an effort to separate their assets. By 2009, R&S was in default on its loan to Colonial Bank. In 2010, the state court entered an order in the litigation commenced by the two investors. In 2011, the Debtors each filed voluntary petitions for bankruptcy relief under Chapter 11.

BB&T and Commonwealth filed motions for substantive consolidation in each of the Debtors' petitions, which the bankruptcy court denied. On appeal, they argue that the evidence they submitted below shows substantive consolidation was appropriate under either of the *Bonham* factors: (a) that the "creditors dealt with the entities as a single economic unit and did not rely on their separate identity in extending credit," or (b) "the affairs of the debtors are so entangled that consolidation will benefit all creditors." *In re Bonham*, 229 F.3d at 765. Both Commonwealth & BB&T argue that the bankruptcy court erred, in considering these factors, by improperly relying on a finding of fact from the state court litigation. Commonwealth further argues the bankruptcy court erred in relying on the issuance of promissory notes from Lenders to the individual investors, and the explanation proffered by R&S's counsel as to why the Debtor's in-house accountant was unaware of

the existence of Lenders until 2008. BB&T also argues that the undisputed evidence was that R&S and Lenders were acting as a single economic unit, and that (contrary to the conclusion of the bankruptcy court), BB&T addressed the purpose of the proposed substantive consolidation.

In its order, the bankruptcy court expressly relied upon a finding of fact from an order entered in the state court litigation. The bankruptcy court provided no indication of the basis upon which it concluded that it could adopt, as its own, the finding of fact by the state court.[2] Both BB&T and Commonwealth note that the Debtors argued, to the bankruptcy court, that issue preclusion bound BB&T to the findings of the state court. They rely on the test for issue preclusion set out in *Five Star Capital Corp. v. Ruby*, 124 Nev. 1048, 1055 (2008), which requires a showing that (1) the issue decided in the prior litigation was identical to the issue being decided in the current litigation, (2) the ruling must have been on the merits and final, (3) the party against whom the judgment was being asserted was a party to or in privity with a party to the prior litigation, and (4) the issue was actually and necessarily litigated. They further argue that the issue before the bankruptcy court (whether Colonial Bank treated the Debtors as a single economic unit in extending the 2007 loan) was not and could not have been identical to an issue decided in the state court litigation. BB&T notes that in *Resolution Trust Corp. v. Keating*, 186 F.3d 1110, 1116 (9th Cir. 1999) the Ninth Circuit recognized four factors to determine whether an issue litigated in prior litigation was identical to an issue in current litigation: whether (1) there is substantial overlap in evidence, (2) the same rule of law applies, (3) the pre-trial and discovery in the prior litigation could have anticipated and embraced the issue as presented in the current litigation, and (4) the claims in each litigation are closely related. BB&T

---

[2] The bankruptcy court did note that the Debtors argued the consolidation motion was barred by res judicata or issue preclusion, or that judicial estoppel or law of the case applies to the instant matter.

4

suggests that each of these factors weighs against a finding that the issue of Colonial Bank's treatment of the Debtors was identical to issues decided by the state court. Further, even if the issues were identical, the appellants argue the issue was not actually and necessarily litigated as the state court also concluded that BB&T failed to demonstrate that it had received an assignment of Colonial Bank's deed of trust, and thus BB&T could not proceed with its claims. Thus, any further finding of fact concerning Colonial Bank was not necessarily litigated. Finally, Commonwealth was not a party to the prior litigation.

The Debtors *only* response to BB&T and Commonwealth's arguments regarding issue preclusion is that the bankruptcy court adopted a "finding of fact," and thus "arguments regarding issue preclusion are not relevant." Accepting the Debtors' argument that issue preclusion is not relevant establishes only that the Debtors are unwilling to defend (and apparently concede they cannot defend) the bankruptcy court's adoption of the state court's finding of fact as appropriate under a theory of issue preclusion. The Debtors do not provide any other basis to defend the bankruptcy court's adoption of the state court's finding of fact. Accordingly, the Court finds that the bankruptcy court erred in adopting the state court's finding of fact. This error is of sufficient magnitude as to vacate the bankruptcy court's decision as it concerns the first *Bonham* factor and to remand this issue for further consideration without reliance on or reference to the state court order.

The Court also finds that remand is appropriate for further consideration whether the appellants met their burden of showing that the investors also treated the debtors as a single economic unit. The bankruptcy court found that "BB&T's arguments are largely based on assumptions, including that because the Investors made their investments to R&S, Rad or Nourachan, 'it is only *logical to assume* that the [ ] Investors believed their investment was to [R&S] . . . not Lenders.' Consolidation Mot. At p. 14 (emphasis added)." The bankruptcy court went on to conclude that "[t]hese assumptions, however, are just that – premises based on conjecture, which are simply too attenuated to conclusively find that

the Investors treated the Debtors are [sic] one economic entity, or that they lent money to Lenders based on R&S's financial status, or vice-versa."

The Court cannot discern the basis of the bankruptcy court's determination that the suggested logical assumptions were "premises based on conjecture." A conjecture suggests the evidence was defective, or non-existent. By contrast, courts are permitted to draw those inferences which reason and common sense lead the court to draw from facts which have been established by the evidence in the case. As noted by the bankruptcy court, the evidence established that the promissory notes were issued only by Lenders. The evidence also established, however, that the Debtors commingled the investments by depositing the investors' checks into R&S's account,[3] and that R&S's tax returns identified that the investments had been made payable to R&S. The evidence also showed that R&S paid interest on the notes issued by Lenders. Further, the evidence established that R&S issued 1099-INTs to each investor. In addition to establishing all of these facts, the evidence further showed that the investors made their checks payable to R&S or to R&S Investment or to the owners or the members of the related entities, but *not* to Lenders. That the investors (1) paid R&S, R&S Investment, Rad or Nourafchan, and (2) accepted, without objection, a pledge for repayment from Lenders, and (3) accepted, without objection, repayment from R&S, and (4) accepted, without objection, 1099-INTs from R&S for interest paid by R&S but owed by Lenders exemplifies the circumstance of creditors dealing with entities as a single economic unit and not relying on their separate identity in extending the credit. While the burden rests on the appellants to show the creditors treated the Debtors as a single economic unit, appropriate inferences drawn from the evidence

---

[3] The Court also cannot perceive the relevance of the 2008 separation of funds as discounting the Debtors' commingling of the investors' funds by deposit into R&S's account on the issue of whether the investors treated the Debtors as a single economic unit. That the Debtors eventually separated their assets bears no significance on the issue whether the investors who wrote checks to R&S, which checks R&S then deposited into its account, discerned a difference between the Debtors.

6

submitted by the appellants readily met their burden. The bankruptcy court's conclusion that the evidence permitted only conjecture on the ultimate issues presented in considering the first *Bonham* factor, as it concerned the investors, was clearly erroneous. Accordingly, the Court will remand the question of whether the appellants met their burden under the first *Bonham* factor as it concerns all creditors, not merely Colonial Bank.

By contrast, the Court cannot conclude that the bankruptcy court erred in reaching its conclusion that substantive consolidation was not warranted under the second *Bonham* factor. Substantive consolidation is appropriate under this factor when "the affairs of the debtors are so entangled that consolidation will benefit all creditors." *In re Bonham*, 229 F.3d at 765. Such consolidation is justified only where "the time and expense necessary even to attempt to unscramble them [is] so substantial as to threaten the realization of any net assets for all the creditors," or where no accurate identification and allocation of assets is possible. *Id.* at 766. The Court concurs with the bankruptcy court that the appellants did not show that the Debtors' affairs are so grossly entangled with one another that disentangling is either impossible or necessary to minimize the realization of net assets available to creditors.

Finally, the appellants argue that the bankruptcy court erred in finding that neither addressed the purpose that substantive consolidation would serve. The Court agrees. "Two broad themes have emerged from substantive consolidation case law: in ordering substantive consolidation, courts must (1) consider whether there is a disregard of corporate formalities and commingling of assets by various entities; and (2) balance the benefits that substantive consolidation would bring against the harms that it would cause." *Id.* at 765. In considering the latter theme, the Court is mindful that the sole aim of substantive consolidation is fairness to all creditors; the equitable treatment of all creditors. Substantive consolidation is not necessarily concerned with the best interest of all of the creditors, but an equitable treatment of and fairness to all creditors. The best interest of

7

some creditors may be to receive treatment at the expense of, and which is unfair to, other creditors. Such would result in the inequitable treatment of all creditors. Such inequitable treatment can arise through the continued recognition of a claim created between entities when both entities disregarded corporate formalities and commingled assets. "Orders of substantive consolidation combine the assets and liabilities of separate and distinct—but related—legal entities into a single pool and treat them as though they belong to a single entity." *Id*. at 764. "The consolidated assets create a single fund from which all claims against the consolidated debtors are satisfied; duplicate and inter-company claims are extinguished; and, the creditors of the consolidated entities are combined for purposes of voting on reorganization plans." *Id.* That the bankruptcy court is "not inclined to re-determine the priority between the loans given that the matter was determined by the State Court" is not an appropriate basis to conclude that substantive consolidation lacks a purpose providing for the equitable treatment of all creditors, particularly in the absence of any showing that it is appropriate to adopt the findings or conclusions of the state court.

In remanding this matter, the Court is neither finding nor directing a determination that substantive consolidation is appropriate. That remains a matter for the bankruptcy court to determine. Rather, the Court has determined only that, in initially making its determination, the bankruptcy court committed certain errors that require it to re-visit the question under the first *Bonham* factor. Therefore, for good cause shown,

THE COURT **ORDERS** that each of the Orders of the bankruptcy court denying the appellants' motions for substantive consolidation are VACATED, and this matter is REMANDED for further proceedings consistent with this order.

DATED this ____ day of March, 2014.

Lloyd D. George
United States District Judge

8